1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MATHIAS ESOIMEME,

11          Plaintiff,                          No. CIV S-10-2259 JAM EFB PS

12          vs.

13   WELLS FARGO BANK; NDEX WEST LLC;
     WORLD SAVINGS BANK; and DOES 1-100,
14   inclusive,
                                                ORDER AND
15          Defendants.                         FINDINGS AND RECOMMENDATIONS
     _____/
16

17          This case, in which plaintiff is proceeding *pro se*, is before the undersigned pursuant to

18   Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  On August 23,

19   2010, defendants Wachovia Mortgage, a division of Wells Fargo Bank, N.A. f/k/a Wachovia

20   Mortgage, FSB, f/k/a World Savings Bank, FSB ("World Savings" or "Wachovia") and Wells

21   Fargo Bank, N.A. ("Wells Fargo") (collectively "Wells Fargo" or the "bank defendants")

22   removed the action to this court from Solano County Superior Court on the ground that

23   plaintiff's complaint alleges federal claims and on the alternative ground that the citizenship of

24   the parties is diverse.[1]  Dckt. No. 1. Wells Fargo now moves to dismiss and to strike plaintiff's

25   _____

26          [1]  Defendant NDeX West, LLC ("NDeX") consented to the removal.  Dckt. No. 2.

                                                1

1   complaint.  Dckt. Nos. 7, 8.

2   I.   Background

3          In this action, plaintiff challenges the origination of a $318,500 refinance loan he entered

4   into with the bank defendants, as well as the procedures defendants followed when foreclosing

5   on plaintiff's home.  Specifically, plaintiff alleges that in or around May 2006, he was solicited

6   by World Savings who offered to refinance his residential real property located at 185 Coloma

7   Way in Vallejo, California ("the subject property").  *Id.* ¶ 10.  The subject loan closed in May

8   2006 as evidenced by the Deed of Trust recorded May 31, 2006 against plaintiff's property.

9   Compl., Ex. C; *see also* Bank Defs.' Req. for Jud. Notice, Dckt. No. 9, Ex. A.[2]  Also on May 31,

10  2006, plaintiff signed an Adjustable Rate Mortgage Note for the subject property.  Bank Defs.'

11  Req. for Jud. Notice, Dckt. No. 9, Ex. G.

12         Plaintiff alleges that World Savings "engaged in wrongful, predatory, and illegal lending

13  practices . . . for the specific, obvious purpose of generating as many sub-prime loans as possible

14  for sale to investors in the United States and abroad."  Dckt. No. 1, Ex. A, Compl. ¶ 9.  Plaintiff

15  further alleges that World Savings "intentionally used deceptive tactics to induce and convince

16  borrowers to obtain loans that they would not have qualified for under conventional lending

17  practices" and that such practices "resulted in borrowers taking on loans that they obviously

18  were not capable of paying."  *Id.*  Plaintiff alleges that he "was one of such victims of

19  defendants' improper marketing and sales effort."  *Id.*

20         Additionally, plaintiff alleges that World Savings had a conflict of interest in that one of

21  its brokers "was paid a 'yield spread premium' fee (YSP fee) to encourage and steer Plaintiff

22

23         [2] Wells Fargo's requests for judicial notice of the exhibits cited herein are granted.
    Judicial notice may be taken of "adjudicative facts" (e.g., court records, pleadings, etc.) and
24  other facts not subject to reasonable dispute and either "generally known" in the community or
    "capable of accurate and ready determination by resort to sources whose accuracy cannot be
25  reasonably questioned."  Fed. R. Evid. 201(b).  A court may also take judicial notice of court
    records.  *See MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986); *United States v.*
26  *Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

into a higher rate loan, which was not the loan Plaintiff had initially wished to undertake" and that the conflict interest and the payment of the YSP fee were concealed from plaintiff at the time the loan was made.  *Id.* ¶ 11.  Plaintiff contends that at the time of the solicitation and refinance offer, "World Savings assured Plaintiff that the amount of the proposed Subject loan would not exceed $318,500.00" but that "[a]fter loan closing, it was discovered that Plaintiff was clearly, willfully, and intentionally misled and decieved" by World Savings Bank and the broker.  *Id.*

¶ 12.  Plaintiff further alleges that he was rushed and pressured "into signing the loan documentation quickly, without any explanation whatsoever of the terms and legal effect of said loan" and without "providing a copy for him to read, study, or understand."  *Id.* ¶ 13.  Plaintiff specifically alleges that "[at] no time prior to [or] at time of executing the Subject Loan documentation did defendant provide Plaintiff with any explanation or clarification of the Security Documents and/or other required disclosures for him to read and review, despite Plaintiff's lack of English proficiency" and that he "was intentionally denied the opportunity to seek legal advice without a copy of the 'Loan Docs.'"  *Id.* ¶ 14.

Plaintiff further alleges that World Savings Bank "used related fraudulent appraisers to give a real estate appraisal that would justify the large loan that was made to Plaintiff" and that defendants knew the value of the subject property was far less than the loan amount and intentionally made a loan to plaintiff that was in excess of the value of the subject property.  *Id.* ¶ 15.  Plaintiff alleges that he has lost all equity in the subject property due to that deceitful loan transaction and agreement with defendants and that the agreement is void ab initio because of defendants' violation of their disclosure requirements and their duty to refrain from making misleading statements and fraudulent misrepresentations, and because of their predatory lending practices.  *Id.*  Plaintiff alleges that he was "wrongfully and unlawfully induced" by World Savings to refinance the subject property and execute the subject loan and security documents.  *Id.* ¶ 16.

Plaintiff also alleges that he was "willfully and intentionally misled and deceived by the deceptive conspiratorial acts, conduct, and misrepresentations of Defendant Wells Fargo who falsely induced plaintiff into believing that said Defendants were assisting Plaintiff with receiving a reasonable and fair 'Loan Modification' agreement of Plaintiff's loan." *Id.* ¶ 17. Plaintiff alleges that when those false representations were made, Wells Fargo knew the "statements were untrue and no Loan Modification was being processed or produced on behalf of Plaintiff," and that defendants "instead deceptively planned, schemed, and conspired to mislead and deceive Plaintiff by not qualify[ing] or attempting to qualify Plaintiff for a Loan Modification agreement. *Id.* ¶¶ 17, 18.

According to plaintiff's complaint, "[a]s a result of the non-payment of the Subject Loan, defendant Wells Fargo demanded a non-judicial foreclosure proceeding against Plaintiff without complying with California [law]" and "did not offer to decrease Plaintiff's principle balance to the fair market value," also in violation of California law. *Id.* ¶ 19. Plaintiff alleges that he "encountered financial difficulties and defaulted on the loan payments to Defendants," and that therefore, on or around July 8, 2009, defendants filed a Notice of Default and Election to Sell Under Deed of Trust, and on July 9, 2009, defendants filed a Notice of Rescission and Declaration of Default and Demand for Sale and Notice of Default and Election to Sell. *Id.* ¶ 21. Plaintiff alleges that defendants then "intentionally and unlawfully filed a Notice of Trustee's Sale using the aforementioned Notice of Default" on March 25, 2010 without seeking a Loan Modification on behalf of plaintiff or seeking to modify the terms of the subject loan. *Id.* ¶¶ 21, 22. A foreclosure took place on July 6, 2010. *See* Wells Fargo's Req. for Jud. Notice, Dckt. No. 9, Ex. H (Trustee's Deed Upon Sale July 13, 2010 and recorded in the Official Records of the Office of the Solano County Recorder on July 19, 2010).

Plaintiff's complaint states the following causes of action against all defendants: (1) predatory lending practices in violation of the Federal Home Ownership Equity Protection Act, 15 U.S.C. § 1637 ("HOEPA"), the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"), Federal

1  Regulation Z, 12 C.F.R. § 22, California Civil Code section 1632, and California Business and

2  Professions Code section 17500; (2) conspiracy; (3) intentional misrepresentation/deceit (fraud);

3  (4) violations of California Civil Code sections 1916.7, 1920, and 1921; (5) demand for

4  accounting; (6) unfair business practices in violation of California Business and Professions

5  Code section 17200; (7) breach of the implied warranty of good faith and fair dealing; (8)

6  declaratory relief; (9) quiet title; and (10) injunctive relief.  Dckt. No. 1 at 12-23.

7  II.  Motion to Dismiss Plaintiff's Complaint

8  Wells Fargo moves to dismiss plaintiff's complaint for failure to state a claim pursuant to

9  Federal Rule of Civil Procedure ("Rule") 12(b)(6) and for failure to state his fraud claims with

10  particularity as required by Rule 9(b).  Dckt. No. 7, Mot. to Dismiss ("Mot.") at 2.  Wells Fargo

11  also contends that plaintiff's complaint fails to comply with Rule 8 in that the complaint does not

12  present a "short and plain statement" of the claims against defendants.[3]  *Id.*

13  A.  Rule 12(b)(6) Standards

14  To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

15  must contain more than a "formulaic recitation of the elements of a cause of action"; it must

16  contain factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell*

17  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more

18  . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

19  action."  *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-

20

21  _____

[3]  In his opposition to Wells Fargo's motion to dismiss, plaintiff states that "the only real

22  issue in this case [is] that [defendants] not only take advantage of my assent, name but also
discriminate, against payment, sending back the money saying they must foreclose on our home,

23  knowing full well we paid our monthly mortgage, and they also raise the county tax on the house
for length of time"; that "[c]hanges [were] made by Wells Fargo on modification of the loan,

24  without agreement [from plaintiff]"; and that "payment due every months was $1350.00 not
$1650 which but we paid $1650 which need be included in the principle, taking advantage of

25  us."  Opp'n, Dckt. No. 17.  Plaintiff also attempts to allege new claims in a sur-reply he filed in
response to Wells Fargo's reply.  *See* Dckt. No. 21.  However, as Wells Fargo notes, none of

26  those allegations are in plaintiff's complaint.  *See* Reply, Dckt. No. 19.  Therefore, they are not
addressed herein.

236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).  The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'"  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).  However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

A Rule 12(b)(6) motion to dismiss may also challenge a complaint's compliance with Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with

6

particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  These circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'" *Id*. at 765 (quoting *Moore v. Kayport Package Express*, 885 F.2d 531, 541 (9th Cir. 1989)).

In deciding a Rule 12(b)(6) motion to dismiss, the court may consider facts established by exhibits attached to the complaint.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of public record, including pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

B.     Plaintiff's Claims

1.     First Claim: Predatory Lending Practices

Plaintiff alleges that all of the defendants engaged in predatory lending practices in violation of the federal Home Ownership Equity Protection Act, 15 U.S.C. § 1637 ("HOEPA"), the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"), Federal Regulation Z, 12 C.F.R. § 22, California Civil Code section 1632, and California Business and Professions Code section 17500.  Compl. ¶ 26.  Specifically, plaintiff alleges that World Savings failed to verify plaintiff's ability to repay the subject loan and instead "manufactured facts and figures" that would show

7

that he did; that World Savings "misled and deceived Plaintiff as to the terms and conditions of

the said Loan, by failing to fully disclose the terms and conditions of said loan which plaintiff

should have known in order to make an informed decision about his ability to make the payment

required"; that defendants violated 15 U.S.C. § 1639(h) by lowering their underwriting standards

in order to write loans to minority borrowers that were otherwise either financially unacceptable

or unduly burdensome and would subject plaintiff and others similarly situated to a high risk of

losing their property to foreclosure; and that defendants' predatory lending practices makes the

security documents for the loan subject to rescission and justify a judgment for damages.  *Id.*

¶¶ 27-29.  Wells Fargo moves to dismiss each of plaintiff's predatory lending claims.  Mot. at 2.

a.  <u>HOEPA</u>

Wells Fargo argues that Plaintiff's loan is not covered by HOEPA and that, even if it

were, the claim is barred by the applicable statute of limitations.  Mot. at 14, 21-22.

"In order to be subject to the protections afforded by HOEPA, one of two factors has to

be established.  Either the annual percentage rate of the loan at consummation must exceed []

more than 10 percent the applicable yield on treasury securities, or the total points and fees

payable by the consumer at or before closing has to be greater than 8 percent of the total loan

amount, or $400.00."  *Lynch v. RKS Mortg., Inc.*, 588 F. Supp.2d 1254, 1260 (E.D. Cal. 2008)

(citing 15 U.S.C. § 1602(aa)(1) & (3); 12 C.F.R. § 226.32(a)(1)).  Plaintiff's complaint does not

allege that his loan is subject to HOEPA, nor does it allege any facts showing that plaintiff's loan

meets the specific thresholds necessary for HOEPA to apply.

Moreover, plaintiff's HOEPA claim appears to be barred by the statute of limitations.

The loan at issue closed in May 2006, yet plaintiff did not file this action until July 2010, which

was more than four years later.  The statute of limitations for violations of HOEPA based on

failures to provide disclosures prior to the loan closing is one year for affirmative relief and three

years for a right to rescind. 15 U.S.C. §§ 1640(e), 1635(f); *In re Cmty. Bank of N. Va.*, 418 F.3d

277, 304-05 (3d Cir. 2005)  ("[T]he Court notes that HOEPA is simply a component of TILA,

1   and thus, it is governed by the same statute of limitations.").

2        In certain circumstances, the doctrine of equitable tolling may "suspend the limitations

3   period," such as when the borrower did not have reasonable opportunity to discover the alleged

4   fraud or nondisclosures that form the basis of plaintiff's TILA claim.  *King*, 784 F.2d at 915; *see*

5   *also Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1120 (9th Cir. 2006) (whether the statute

6   of limitations should be equitably tolled is a factual determination that "focuses on whether there

7   was excusable delay by the plaintiff and may be applied if, despite all due diligence, a plaintiff is

8   unable to obtain vital information bearing on the existence of his claim.") (quotations and

9   citations omitted); *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003)

10  (dismissing TILA claim, despite request for equitable tolling, where plaintiff was in possession

11  of all loan documents and did not allege any concealment or other conduct that would have

12  prevented discovery of the alleged TILA violations during the one year limitations period).

13  Since plaintiff has not alleged any facts suggesting that the statutes of limitation should be

14  equitably tolled, plaintiff's HOEPA claim is time barred and should be dismissed.  Plaintiff will

15  be granted leave to amend his HOEPA claim only if he can cure these deficiencies.

16              b.  TILA

17        Wells Fargo next contends that plaintiff's TILA claim is barred by the statute of

18  limitations and that plaintiff's claim for rescission under TILA terminated when the subject

19  property was sold at foreclosure sale.  Mot. at 14, 22-23.

20        Here, plaintiff's purported TILA claim also appears to be barred by the statute of

21  limitations.  TILA is intended to protect consumers in credit transactions by requiring

22  "meaningful disclosure of credit terms." 15 U.S.C. § 1601(a).  A lender's violation of TILA

23  allows the borrower to seek damages or to rescind a consumer loan secured by the borrower's

24  primary dwelling.  *Copeland v. Lehman Brothers Bank, FSB*, 2010 WL 2817173, at *5 (S.D.

25  Cal. July 15, 2010).  However, a plaintiff's damage claims relating to improper disclosures under

26  TILA are subject to a one-year statute of limitations, 15 U.S.C. § 1640(e), which runs from the

time the loan transaction is consummated.  *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir.

1986); *see also Meyer*, 342 F.3d at 902 (failure to make the required disclosures under TILA

occurs at the time the loan documents were signed).  Rescission claims under TILA "shall expire

three years after the date of the consummation of the transaction or upon the sale of the property,

whichever occurs first."  15 U.S.C. § 1635(f).  The right to rescission under TILA expires three

days after the necessary disclosures are provided to the borrower.  15 U.S.C. § 1635(a).

  Although equitable tolling of TILA claims may be appropriate "in certain

circumstances," and can operate to "suspend the limitations period until the borrower discovers

or had reasonable opportunity to discover the fraud or non-disclosures that form the basis of the

TILA action," *King*, 784 F.2d at 914-15, when a plaintiff fails to allege facts demonstrating that

he could not have discovered the alleged violations by exercising reasonable diligence, dismissal

is appropriate.  *Meyer*, 342 F.3d at 902-03 (refusing to apply equitable tolling to TILA claim

because the plaintiff was in full possession of all loan documents and did not allege any

concealment of loan documents or other action that would have prevented discovery of the

alleged TILA violations); *see also Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996)

(finding that plaintiff was not entitled to equitable tolling of her TILA claim because "nothing

prevented [plaintiff] from comparing the loan contract, [the lender's] initial disclosures, and

TILA's statutory and regulatory requirements").  Since the loan at issue was consummated on

May 31, 2006, but this action was not filed until July 12, 2010, and plaintiff has not alleged any

facts supporting equitable tolling of the statute of limitations, plaintiff's TILA claim is barred by

the statute of limitations.

  Moreover, because the subject property was sold at the trustee's sale on July 9, 2010, any

right of rescission plaintiff may have had expired upon the sale of the property.  Additionally,

§ 1635(b) requires that the borrower tender to the lender any money received from the lender in

order to complete a rescission. 15 U.S.C. § 1635(b); *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167,

1173 (9th Cir. 2003) (TILA rescission claim dismissed because no showing that tender had

1   occurred or that the borrower had the capacity to repay the principal borrowed); *LaGrone v.*

2   *Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1974) (loan rescission conditioned on the borrower's

3   tender of funds given the lender's non-egregious TILA violations).  Here, plaintiff fails to allege

4   tender or the ability to offer tender.  Therefore, plaintiff's TILA claim must be dismissed.

5   Plaintiff will be granted leave to amend his TILA claim only if he can cure these deficiencies.

6                                        c.  Regulation Z

7           Wells Fargo also argues that plaintiff's claim for violation of Regulation Z fails as does

8   his TILA claim, as Regulation Z is an implementing regulation for TILA.  Mot. at 14, 23.

9           As discussed above, the subject loan closed in May 2006, yet plaintiff did not file this

10  action until July 2010, more than four years later.  However, alleged violations of Regulation Z,

11  12 C.F.R. § 226, are subject to the same one-year limitation period as TILA claims under 15

12  U.S.C. § 1640(e).  Therefore, plaintiff's claim that defendants violated Regulation Z is time-

13  barred and should be dismissed with leave to amend only if plaintiff can cure this deficiency.

14                                 d.  California Civil Code § 1632

15          Wells Fargo further contends that plaintiff's claim for violation of California Civil Code

16  section 1632 is improper because the only available remedy under section 1632 is rescission of

17  the underlying agreement and rescission is not possible because the underlying agreement (the

18  note and deed of trust) was extinguished by the trustee's sale.  Mot. at 14, 23.

19          Section 1632 requires "any person engaged in a trade or business who negotiates

20  primarily in [a language other than English], orally or in writing, in the course of entering

21  [several types of contracts to] deliver to the other party to the contract or agreement and prior to

22  the execution thereof, a translation of the contract or agreement in the language in which the

23  contract or agreement was negotiated."  Cal. Civ. Code. § 1632(b).  Plaintiff alleges that

24  defendants violated this provision.  Plaintiff's claim under section 1632 is also subject to a

25  one-year statute of limitations pursuant to California Civil Code 340(a) and is likewise time

26  barred.  Additionally, as Wells Fargo argues, the only remedy for violation of section 1632 is

1   rescission of the subject contract – not the ensuing trustee's sale that extinguishes the note and

2   deed of trust.  *Id.* **§** 1632(k); *Ralph C. Sutro Co. v. Paramount Plastering, Inc.*, 216 Cal. App. 2d

3   433, 437-38 (1963).  Because the non-judicial foreclosure sale extinguished the note and deed of

4   trust, rescission is therefore not possible.  Additionally, rescission is not available to plaintiff

5   because, as noted above, he has not alleged that he is able to tender the proceeds of his loan.

6   *Brown v. Bank of Am., N.A.*, 2011 WL 1253844, at *6 (E.D. Cal. Mar. 31, 2011) ("Rescission is

7   the only remedy available under § 1632, and that remedy is not available to plaintiff because, as

8   noted above, he has not alleged that he is able to tender the proceeds of his loan.").  Therefore,

9   plaintiff's claim under section 1632 should be dismissed without leave to amend.

10                    e.  California Business and Professions Code § 17500

11          Finally, Wells Fargo argues that plaintiff's claim under Business and Professions Code

12   section 17500 fails because: (a) a claim for false advertising under section 17500 must be alleged

13   with greater particularity as required for fraud; (b) the claim is time-barred; and (c) the claim is

14   preempted by the Home Owners Loan Act, 12 U.S.C. §§ 1461, *et seq*. ("HOLA").  Mot. at 14,

15   24.

16          "To state a claim under section 17500, a Plaintiff must establish that 'members of the

17   public are likely to be deceived' by an entity's misleading statements."  *Gomez v. World Savings*

18   *Bank FSB,* 2010 WL 5280004, at *3 (E.D. Cal. Dec. 13, 2010) (quoting *In re Tobacco II Cases*,

19   46 Cal. 4th 298, 311 (2009)).  Plaintiff's conclusory allegation that defendants engaged in

20   predatory lending practices in violation of section 17500, "the specifics of which are unknown,"

21   Comp. ¶ 26, is insufficient to withstand a motion to dismiss under *Twombly*, 550 U.S. at 555.

22          Also, as discussed above, the subject loan closed in May 2006, yet plaintiff did not file

23   this action until July 2010, more than four years later.  Although section 17500 does not itself

24   contain its own limitations period, the statute of limitations on claims that do not contain their

25   own limitations period is three years.  Cal. Civ. Proc. Code § 338(a); *Brown v. Option One*

26   *Mortg. Corp*., 2010 WL 1267774, at *3 (N.D. Cal. Apr. 1, 2010) ("The alleged violation of

1   Business and Professions Code sections 17500 . . . has a three-year statute of limitations when

2   the violation is based on statutory violations.").  Therefore, plaintiff's claims for violation of

3   section 17500, which appear to be based on defendants' conduct related to the underlying loan

4   transaction, are time-barred.

5          Further, plaintiff's claim for violation of section 17500 is preempted by HOLA.

6   Pursuant to HOLA, the Office of Thrift Supervision ("OTS") was granted the power, "under

7   such regulations as [it] may prescribe—to provide for the organization, incorporation,

8   examination, operation, and regulation of . . . Federal savings associations. . . ." 12 U.S.C.

9   § 1464(a).  The OTS is thus authorized "to prescribe a nationwide system of operation,

10  supervision, and regulation which would apply to all federal associations." *Glendale Fed. Sav. &*

11  *Loan Ass'n v. Fox*, 459 F. Supp. 903, 909 (C.D. Cal. 1978).  The OTS regulations are

12  "preemptive of any state law purporting to address the subject of the operations of a federal

13  savings association." 12 C.F.R. § 545.2.  The "OTS hereby occupies the entire field of lending

14  regulation for federal savings associations" and a federal savings bank, "may extend credit as

15  authorized under federal law, including this part, without regard to state laws purporting to

16  regulate or otherwise affect their credit activities."  12 C.F.R. § 560.2(a).

17         The U.S. Court of Appeals for the Ninth Circuit has "described HOLA and its following

18  agency regulations as . . . so pervasive as to leave no room for state regulatory control.

19  [B]ecause there has been a history of significant federal presence in national banking, the

20  presumption against preemption of state law is inapplicable."  *Silvas v. E*Trade Mortgage*

21  *Corp.*, 514 F.3d 1001, 1004-05 (9th Cir. 2008).  The applicable regulations provide for HOLA

22  preemption of state laws that purport to impose upon a federal savings bank any requirements

23  regarding the "terms of credit, including . . . balance, payments due, or term to maturity of the

24  loan"; "disclosure and advertising," and "processing, origination, servicing, sale or purchase of,

25  or investment or participation in, mortgages."  12 C.F.R. § 560.2(b)(4), (b)(9), and (b)(10).

26  ////

1       However, HOLA's preemption of state laws affecting federal savings associations is not

2   absolute.  Section 560.2(c) carves out state laws that "only incidentally affect the lending

3   operations of Federal savings associations or are otherwise consistent with the purposes of

4   paragraph (a) of this section."  12 C.F.R. § 560.2(c).  The Ninth Circuit has given further

5   guidance with respect to whether a state law of general applicability is preempted by HOLA "as

6   applied":

> [T]he first step will be to determine whether the type of law in
> question is listed in paragraph (b) [of 12 C.F.R. § 560.2].  If so, the
> analysis will end there; the law is preempted. If the law is not
> covered by paragraph (b), the next question is whether the law
> affects lending. If it does, then, in accordance with paragraph (a),
> the presumption arises that the law is preempted.  This
> presumption can be reversed only if the law can clearly be shown
> to fit within the confines of paragraph (c).  For these purposes,
> paragraph (c) is intended to be interpreted narrowly.  Any doubt
> should be resolved in favor of preemption.

13  *Silvas*, 514 F.3d at 1004-06 ("Section 560.2(c) provides that state laws of general applicability

14  only incidentally affecting federal savings associations are not preempted."); *accord DeLeon v.*

15  *Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1125 (N.D. Cal. 2010).

16      Here, plaintiff has not disputed that defendants are lenders embraced by HOLA.  *See*

17  Wells Fargo's Req. for Jud. Notice, Dckt. No. 9, Ex. B-F (copies of documents from the OTS

18  and FDIC declaring that World Savings Bank, FSB, subsequently known as Wachovia

19  Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A., was

20  a federal savings bank).  The Ninth Circuit has specifically held that a mortgage applicant's

21  section 17500 false advertising claim is preempted by HOLA.  *Silvas*, 514 F.3d at 1004-05.

22  Because plaintiff's section 17500 claim is based on defendants' conduct related to the

23  origination of plaintiff's underlying loan, as well as certain disclosures and terms of credit

24  related thereto, it is preempted by 12 C.F.R. § 560.2(b)(4), (b)(9), and (b)(10).  Accordingly,

25  plaintiff's section 17500 claim should be dismissed without leave to amend.

26  ////

### 2. Second Claim: Conspiracy

Plaintiff alleges that defendant World Savings "conceived, designed and executed a plan, scheme and agreement to deceive and deprive Plaintiff of his statutory rights to protect his property from unexpected foreclosure" and that World Savings, Wells Fargo, and NDeX, acting in concert, planned, schemed, designed, and illegally conspired to "steal" the subject property from plaintiff by conducting an illegal, unnoticed Trustee's Sale without proper statutorily mandated required loan documents and subsequent notices.  Compl. ¶¶ 31-32.  Wells Fargo moves to dismiss plaintiff's conspiracy claim, arguing that there is no independent claim for civil conspiracy and that the claim is preempted by HOLA.  Mot. at 3, 17, 24.

A conspiracy is not an independent cause of action, but is instead "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994).  Liability for civil conspiracy generally requires three elements: (1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy.  *Id.* at 511.  A civil conspiracy is therefore activated by the commission of an underlying wrongful act.  *Id.*  Plaintiff's bare allegations are insufficient to state a claim for civil conspiracy.  Plaintiff must allege facts showing the role each defendant allegedly played in the conspiracy, which he has not done.  Therefore, plaintiff's conspiracy claim should be dismissed with leave to amend.[4]

### 3. Third Claim: Intentional Misrepresentation/Deceit (Fraud)

Plaintiff alleges that World Savings failed to verify plaintiff's ability to repay the subject loan; manufactured facts and figures that would show that plaintiff had the ability to repay the subject loan; misled plaintiff as to the terms and conditions of the subject loan; failed to fully

---

[4]  Because plaintiff has not stated a claim for conspiracy, the undersigned declines to consider at this time whether any such claim is preempted by HOLA.

1  disclose the terms and conditions of the subject loan; and lowered its underwriting standards in

2  order to provide plaintiff with a financially burdensome and unbearable loan.  Compl. ¶¶ 37-38.

3  Plaintiff further alleges that all of the defendants "did this to be able to later foreclose on the

4  Plaintiff, take his property, and repeat the same fraud, and unfair and unlawful business practice

5  again to unwitting borrowers."  *Id.* ¶ 38.  Finally, plaintiff alleges that all of the defendants

6  violated California Business and Professions Code section 17500 by making untrue and

7  misleading statements about the terms of the subject loan.  *Id.*

8          Wells Fargo moves to dismiss plaintiff's third claim, arguing that the claim is

9  time-barred, the claim is preempted by HOLA, and plaintiff failed to plead fraud in compliance

10  with Rule 9(b).  Mot. at 3, 17, 24.

11          Plaintiff's intentional misrepresentation/fraud claim fails under Rule 9(b), which requires

12  fraud claims to be pled with particularity.  To state a claim for fraud, a plaintiff must plead "(a)

13  misrepresentation; (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce

14  reliance; (d) justifiable reliance; and (e) resulting damage."  *Small v. Fritz Cos.*, 30 Cal. 4th 167,

15  173 (2003); *see generally* Cal. Civ. Code §§ 1709-10.  "In all averments of fraud . . . , the

16  circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The

17  allegations must be "specific enough to give defendants notice of the particular misconduct

18  which is alleged to constitute the fraud charged so that they can defend against the charge and

19  not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th

20  Cir. 1985).  In addition to the "time, place and content of an alleged misrepresentation," a

21  complaint "must set forth what is false or misleading about a statement, and . . . an explanation

22  as to why the statement or omission complained of was false or misleading."  *Yourish v. Cal.*

23  *Amplifier*, 191 F.3d 983, 993, n.10 (9th Cir. 1999).  The complaint must also name the persons

24  who made the allegedly fraudulent statements.  *See Morris v. BMW of N. Am., LLC*, 2007 WL

25  3342612, at *3 (N.D. Cal. 2007) (citing *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 n.7

26  (9th Cir. 1994) (en banc)).

1    Here, plaintiff does not identify any specific misrepresentations or any facts about those

2    purported misrepresentations.  Indeed, the complaint fails to state who allegedly made fraudulent

3    representations on behalf of Wells Fargo, whether those speakers had authority to speak, how the

4    alleged misrepresentations were made, or any of the other facts necessary to state a fraud claim.

5    In other words, the complaint does not identify "'the who, what, when, where, and how'" of the

6    alleged fraud.  *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

7    1997)).  Instead, plaintiff combines all purportedly fraudulent conduct together in generalized

8    summaries, which is insufficient under Rule 9(b).

9    Moreover, at least some of plaintiff's fraudulent misrepresentation claim appears to be

10   barred by the three year statute of limitations for fraud under California Code of Civil Procedure

11   section 338(d).  *See* Dckt. No. 22 at 6.  "[A]s a general rule the limitations period starts at the

12   consummation of the transaction."  *King*, 784 F.2d at 915.  Here, as Wells Fargo argues, the

13   majority of plaintiff's allegations supporting his fraud/misrepresentation claim involve

14   representations and omissions occurring at loan origination in May 2006, which was more than

15   three years from the date of the filing of the complaint, and plaintiff does not allege delayed

16   discovery of the fraud/misrepresentations.  *See* Cal. Civ. Proc. Code § 338(d) (providing that the

17   statute of limitations begins to run when plaintiff discovers the fraud).  Therefore, those

18   allegations are barred by the statute of limitations.[5]

19

20

---

21   [5] Plaintiff also alleges in the general allegations portion of his complaint that he was
     "willfully and intentionally misled and deceived by the deceptive conspiratorial acts, conduct,
22   and misrepresentations of Defendant Wells Fargo who falsely induced plaintiff into believing
     that said Defendants were assisting Plaintiff with receiving a reasonable and fair 'Loan
23   Modification' agreement of Plaintiff's loan."  Compl. ¶ 17.  Plaintiff alleges that when those
     false representations were made, Wells Fargo knew the "statements were untrue and no Loan
24   Modification was being processed or produced on behalf of Plaintiff," and that defendants
     "instead deceptively planned, schemed, and conspired to mislead and deceive Plaintiff by not
25   qualify[ing] or attempting to qualify Plaintiff for a Loan Modification agreement.  *Id.* ¶¶ 17, 18.
     Because it is unclear when these purported misrepresentations occurred, it is unclear whether the
26   allegations based on those misrepresentations are barred by the statute of limitations.

Additionally, the majority of plaintiff's misrepresentation/fraud claim is preempted by HOLA.  In his misrepresentation claim, plaintiff alleges primarily that defendants "failed to verify plaintiff's ability to repay the subject loan; manufactured facts and figures that would show that plaintiff had the ability to repay the subject loan; misled plaintiff as to the terms and conditions of the subject loan; failed to fully disclose the terms and conditions of the subject loan; and lowered its underwriting standards in order to provide plaintiff with a financially burdensome and unbearable loan."  Compl. ¶¶ 37-38.  Because those allegations are entirely based on defendants' disclosures, the provision of credit-related documents, and the processing, origination, or servicing of his mortgage, they are preempted by § 560.2(b)(4), (b)(9), and (b)(10).  *Silvas*, 514 F.3d at 1006; *see also, e.g., Newsom v. Countrywide Home Loans, Inc*., 714 F. Supp.2d 1000, 1012-13 (N.D. Cal. 2010) (finding that HOLA preempted fraud claim alleging that defendant failed to provide disclosures and misrepresented interest rates and fees); *Amaral v. Wachovia Mortg. Corp*., 692 F. Supp.2d 1226, 1237-38 (E.D. Cal. 2010) (finding that HOLA preempted fraud claim alleging that defendant made material false representations regarding plaintiffs' loan).  Therefore, under the approach put forth by OTS and adopted by the Ninth Circuit, the majority of plaintiff's misrepresentation/fraud claim is preempted and should be dismissed without leave to amend.

However, because plaintiff's allegations regarding defendants' misrepresentations related to the alleged loan modification, Compl. ¶¶ 17, 18, may arise from a "general duty not to misrepresent material facts," rather than from a "state law purporting to address the subject of the operations of a federal savings association," plaintiff's fraud claim that is based on those allegations may not be preempted by HOLA.  *Silvas*, 514 F.3d at 1004-06; *Becker v. Wells Fargo Bank*, 2011 WL 1103439, at *8-9 (E.D. Cal. Mar. 22, 2011); *DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at *1-11 (N.D. Cal. Jan. 28, 2011) (where plaintiff alleged that defendant "falsely represented" that a loan modification would be given and that foreclosure would not occur while the modification process was ongoing, fraud and unfair competition

claims arising therefrom were not preempted by HOLA); *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 417 (N.D. Cal. 2009) (distinguishing between allegations of inadequate disclosures of loan terms and affirmative, material misrepresentations). "[U]ntil plaintiff clarifies the allegations surrounding defendants' alleged misrepresentations [regarding the loan modification], the undersigned cannot conclude that any particular misrepresentations necessarily amounted to 'processing' or 'servicing' mortgages as opposed to affirmative or material misrepresentations with only an incidental connection to lending operations." *Becker,* 2011 WL 1103439, at *9. Therefore, plaintiff's allegations that defendants made misrepresentations about a purported loan modification are dismissed with leave to amend.

4. Fourth Claim: Intentional Violation of Cal. Civ. Code §§ 1916.7, 1920, 1921

Plaintiff alleges that defendants "entered into an illegal pooling agreement in express violation of California [Civil Code sections] 1916.7, 1920, and 1921, and as a direct and proximate result therefore, failed to satisfy the requirements of an adjustable mortgage instrument as set forth in [section] 1920, and the requirements for disclosure of information and connections with a mortgage instrument, as set forth, required by [section] 1921." Compl. ¶ 42.

Wells Fargo moves to dismiss plaintiff's fourth claim, arguing that the statutes plaintiff cites are inapplicable to the subject loan; the statutes do not create a private right of action; and the statutes are preempted by HOLA. Mot. at 3. Specifically, Wells Fargo contends that the fourth claim "is devoid of any detail and simply alleges statutory violations," that the "conclusory allegations fail to show that [the cited statutes actually] apply or could have been violated," and that the statutes "do not apply, were not intended to apply, and would be preempted if they did." *Id.* at 25.

Plaintiff has not alleged any facts to show that any of the cited statutes apply. *See* Cal. Civ. Code §§ 1916.7(c), 1920, 1921 (applying only to mortgage loans made under California law); *see also Brown v. Bank of America, N.A.*, 2011 WL 1253844, at *7-8 (E.D. Cal. Mar. 31, 2011); *Estillore v. Countrywide Bank FSB,* 2011 WL 348832, at *15-16 (E.D. Cal. Feb. 2, 2011);

19

1   *Santos v. U.S. Bank N.A.*, 716 F. Supp. 2d 970, 980 (E.D. Cal. 2010); *Marks v. Chicoine*, 2007

2   WL 1056779, at *8 (N.D. Cal. Apr. 6, 2007).  Additionally, it does not appear that the statutes

3   explicitly authorize a private right of action.  *Tayag v. Nat'l City Bank*, 2009 WL 943897, at *5,

4   n.2 (N.D. Cal. Apr. 7, 2009) ("the text of CCC 1916.7 does not explicitly create a private right of

5   action"); *Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1055, n.5 (E.D. Cal. 2009) ("no

6   authority . . . supports a private right of action directly" under California Civil Code section

7   1920).

8        Additionally, plaintiff's claims under sections 1916.7(c), 1920, and 1921, which set forth

9   requirements for mortgages and related disclosures, fall within 12 C.F.R. § 560.2(b)(4), (b)(9),

10  and (b)(10) and are therefore preempted.  *See Mesde v. American Brokers Conduit*, 2009 WL

11  1883706, at *4 (N.D. Cal. June 30, 2009); *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp.2d

12  895, 913 (C.D. Cal. 2009) (claim brought under California Civil Code § 1916.7 subject to federal

13  preemption); *Santos*, 716 F. Supp.2d at 980-81 (claim under California Civil Code § 1916.7

14  preempted by the federal Alternative Mortgage Transaction Parity Act (AMTPA) of 1982); *see*

15  *also Jennings v. Wash. Mutual Bank*, 2011 WL 775861, at *5–6 (E.D. Cal. Feb. 28, 2011)

16  (claims brought under California Civil Code §§ 1916.7, 1920, and 1921 found to be preempted

17  by HOLA); *Kanady v. GMAC Mortgage, LLC*, 2010 WL 4010289, at *12 (E.D. Cal. Oct.13,

18  2010) (claims brought under California Civil Code §§ 1916.7, 1920, and 1921 dismissed based

19  upon federal preemption).  Therefore, plaintiff's fourth claim should be dismissed without leave

20  to amend.[6]

21

22        [6] Plaintiff also alleges in the general allegations portion of his complaint that defendants
    failed to comply with the pre-foreclosure procedures of California Civil Code section 2923.5,
23  Compl. ¶18, by "not qualify[ing] or attempting to qualify Plaintiff for a 'Loan Modification'"
    and demanding a non-judicial foreclosure "without complying with California Civil Code
24  Section 2923.5, et seq," *id.* ¶ 19.  Although Wells Fargo argues that these claims are preempted
    under HOLA, "[t]he Ninth Circuit has not ruled on this issue, and district courts within the Ninth
25  Circuit are split on the issue." *Shaterian v. Wells Fargo Bank, Nat. Ass'n,* 2011 WL 2314151, at
    *4 n.8 (N.D. Cal. June 10, 2011) (citing *Loder v. World Savings Bank*, 2011 WL 1884733, at *3
26  (collecting cases).  Nonetheless, "the only remedy provided under [section 2923.5] is

1                     5.  <u>Fifth Claim: Demand for Accounting</u>

2        Plaintiff requests an accounting because "[t]he true amount of money, if any, owed to

3 Defendants by Plaintiff is unknown as Defendants allege different figures for the payoff of the

4 loan that Plaintiff contends is owed."  Compl. ¶ 45.  According to plaintiff, prior to filing his

5 complaint, plaintiff requested copies of the entire file from defendants pursuant to 12 U.S.C.

6 § 2605(e) of the Real Estate Settlement and Procedures Act ("RESPA"), but defendants "have

7 unlawfully and outrageously failed and refused to respond to said request."  *Id.*

8        Wells Fargo moves to dismiss plaintiff's claim for an accounting, arguing that the claim

9 is based on the alleged failure to respond to a "Qualified Written Request" in violation of

10 RESPA and plaintiff fails to specify that he make a valid written request, and that an accounting

11 is unavailable to determine the amount that a plaintiff owes a defendant and plaintiff otherwise

12 fails to establish a valid basis for an accounting.  Mot. at 3, 26-27.

13        Plaintiff's "demand for accounting" claim is unclear.  It appears he has requested a payoff

14 amount, to which he has received different amounts owed.  He also states that he had requested

15 copies of his file from defendant pursuant to RESPA, but his request has been refused.  Reading

16 the complaint in the light most favorable to plaintiff, it appears to the undersigned that what

17 plaintiff is actually alleging is a violation of Section 2605 of RESPA for defendant's failure to

18 respond to a Qualified Written Request ("QWR").  Section 2605(e)(1)(A) provides that "[i]f any

19 servicer of a federally related mortgage loan receives a qualified written request from the

20 borrower (or an agent of the borrower) for information relating to the servicing of such loan, the

21 servicer shall provide a written response acknowledging receipt of the correspondence within 20

22 days . . . unless the action requested is taken within such period."  12 U.S.C. § 2605(e)(1)(A).

23 RESPA defines a QWR as a notice that "includes a statement of the reasons for the belief of the

24

25 postponement of the sale before it happens, and in this case, the subject property was sold in
[July 2010]."  *Alda v. Wells Fargo Bank, N.A.,* 2011 WL 2678886, at *3 (E.D. Cal. July 7, 2011)
(citing *Mabry v. Super. Ct.,* 110 Cal. Rptr. 3d 201, 213-18 (2010)).  Therefore, plaintiff's claim

26 for violation of section 2923.5 should be dismissed without leave to amend.

borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).  A QWR must seek information relating to the servicing of the loan; a request for loan origination documents is not a QWR.  *Patacsil v. Wilshire Credit Corp*., 2010 WL 500466, at *5 (E.D. Cal. Feb. 8, 2010) (finding that request for information "simply relat[ing] to the origination of the loan, not any servicing errors" was not a QWR); *Lima v. Am. Home Mortg. Servicing*, 2010 WL 144810, at *3 (N.D. Cal. Jan.11, 2010) (holding that a request for "documents associated with the loan's origination" is not a QWR under RESPA); *Consumer Solutions REO LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) ("[t]hat a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan.").

Here, plaintiff does not allege a specific inquiry that constitutes a QWR that would trigger a duty to respond under RESPA, nor does he allege any pecuniary loss from defendant's alleged failure to respond to the QWR, which renders his claim insufficient.  *See Saldate v. Wilshire Credit Corp*., 711 F. Supp.2d 1126, 1134 (E.D. Cal. 2010); *Vanduzen v. Homecomings Fin*., 2009 WL 3246997, at *6 (E.D. Cal. 2009) (RESPA claim subject to motion to dismiss when it "fails to indicate to whom the qualified written request was addressed, the subject matter of the request, and the basis for the dispute regarding the amount of the loan."); *Morris v. Bank of Am.*, 2011 WL 250325, at *5 (N.D. Cal. Jan. 26, 2011) (dismissing RESPA claim where plaintiffs failed to allege that they had suffered actual damages resulting from defendants' failure to respond to their QWRs); *Molina v. Wash. Mut. Bank*, 2010 WL 431439, at *7 (S.D. Cal. Jan.29, 2010) ("Numerous courts have read Section 2605 as requiring a showing of pecuniary damages to state a claim.") (collecting cases).

Moreover, "there is no statutory basis for an accounting under RESPA."  *Aniel v. Litton Loan Servicing, LP*, 2011 WL 6355258, at *5 (N.D. Cal. Feb. 11, 2011); *see also Orozco v. DHI Mortgage, Co. Ltd,* 2010 WL 2757283, at *6 (S.D. Cal. July 13, 2010) (no statutory basis for

1   accounting under 12 U.S.C. § 2605); *Zendejas v. GMAC Wholesale Mortg. Corp.*, 2010 WL

2   2490975, at *8 (E.D. Cal. June 16, 2010) ("section 2605, which imposes upon a loan servicer an

3   obligation to respond to borrower inquiries, does not provide for an accounting").  Therefore,

4   plaintiff's fifth claim should be dismissed without leave to amend.

5                            6.  Sixth Claim: Unfair Business Practices

6        Plaintiff alleges that defendants have committed unfair business practices in violation of

7   California Business and Professions Code section 17200 *et seq.*, "by engaging in acts [that

8   violate TILA]; using bait and switch tactics; making loans without providing borrowers with

9   sufficient, accurate and understandable information regarding the terms and conditions of the

10  loan; and making loans without providing borrowers with sufficient, accurate, and

11  understandable information regarding the nature and extent of the financial risk being assumed

12  by the borrowers."  Compl. ¶ 50.

13       Wells Fargo moves to dismiss plaintiff's unfair business practices claim, arguing that the

14  cause of action is time-barred because it is dependent upon claims that are time-barred; the claim

15  is preempted by HOLA; and the claim is not pleaded with particularity as required by Rule 9(b).

16  Mot. at 3, 15-16, 27-28.

17       California's Unfair Competition Law, section 17200, prohibits any "unlawful, unfair or

18  fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Section 17200

19  incorporates other laws and treats violations of those laws as unlawful business practices

20  independently actionable under state law.  *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d

21  1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the

22  basis for a section 17200 claim.  *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838-39 (1994).  In

23  addition, a business practice may be "unfair or fraudulent in violation of [section 17200] even if

24  the practice does not violate any law."  *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003).

25       Here, plaintiff alleges that defendants engaged in unfair business practiced under section

26  17200.  To state a claim for unfair business practices, a plaintiff must plead that "(1) the

                                           23

1  consumer injury is substantial, (2) the injury is not outweighed by any countervailing benefits to

2  consumers or competition, and (3) the injury is one that consumers themselves could not

3  reasonably have avoided."  *Morgan v. AT&T Wireless Svcs., Inc*., 177 Cal. App. 4th 1235,

4  1254-55 (2009) (citation omitted).  Plaintiff does not make any such allegations.  Instead

5  plaintiff lumps all of the defendants together and simply alleges that they have all engaged in

6  unfair business practices.  Those allegations are insufficient to withstand a motion to dismiss

7  under *Twombly*, 550 U.S. at 555.

8       Moreover, plaintiff's claims under section 17200 relate to alleged conduct at loan

9  origination, which occurred in May 2006.  A section 17200 claim "cannot be used to state a

10 cause of action the gist of which is absolutely barred under some other principle of law."  *Stop*

11 *Youth Addiction, Inc. v. Lucky Stores, Inc*., 17 Cal. 4th 553, 566 (1998); *see also Chabner v.*

12 *United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) ("A court may not allow a

13 plaintiff to 'plead around an absolute bar to relief simply by recasting the cause of action as one

14 for unfair competition.'").  Here, plaintiff's section 17200 claim is based on alleged violation of

15 "various consumer protection statutes, or which violate the policy or spirit of such laws

16 including, but not limited to, California Business and Professions Code sections 10130

17 (regarding real estate broker licensing, having no applicability to Wells Fargo) and Title 15 of

18 the United States Codes, together with Regulation Z 12 C.F.R. 226.1."  Compl. ¶ 51.  As

19 discussed above, plaintiff's TILA and Regulation Z claims are time-barred.  Therefore, the

20 mirroring section 17200 claim is also time-barred.

21      Additionally, it appears that plaintiff's section 17200 claim, which is based entirely on

22 alleged conduct at loan origination, is preempted by HOLA, 12 C.F.R. § 560.2(b)(4), (b)(9), and

23 (b)(10).  *Silvas*, 514 F.3d at 1006; *Nava v. Virtual Bank*, 2008 WL 2873406, at *6-8 (E.D. Cal.

24 July 16, 2008).  Therefore, plaintiff's sixth claim should be dismissed without leave to amend.

25

26

7.  <u>Seventh Claim: Breach of Implied Warranty of Good Faith and Fair Dealing</u>

Plaintiff alleges that from the inception of the agreement with defendants, defendants misled and deceived plaintiff, and willfully and intentionally breached the implied covenant of good faith and fair dealing owed to plaintiff, in order to injure plaintiff and deceptively "steal" the subject property.  Compl. ¶¶ 55, 56.  Wells Fargo moves to dismiss this claim, arguing that the cause of action is time-barred, that the claim is preempted by HOLA, and that plaintiff impermissibly asserts a tort claim for breach of the "implied covenant of good faith and fair dealing."  Mot. at 4, 17, 28.

Under California law, a tort claim for breach of the covenant of good faith and fair dealing is only available against insurance companies.  *Cates Construction, Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43, 86 (1999) (stating that "[b]ecause the covenant of good faith and fair dealing essentially is a contract term that aims to effectuate the contractual intentions of the parties, 'compensation for its breach has almost always been limited to contract rather than tort remedies'" and recognizing "only one exception to that general rule: tort remedies are available for a breach of the covenant in cases involving insurance policies.").  Therefore, "[t]he prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties."  *Smith v. City & County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990).  The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract."  *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093-94 (2004).

The statute of limitations for a claim of breach of the implied covenant of good faith and fair dealing under California law is four years.  Cal. Civ. Proc. Code § 337; *see also Wilkerson v. World Savings and Loan Ass'n*, 2009 WL 2777770, at *3 (E.D. Cal. Aug. 27, 2009).  As noted above, the loan at issue closed in May 2006, yet plaintiff did not file this action until July 2010, which was more than four years later.  Therefore, this cause of action is time barred.

1    Moreover, because plaintiff's good faith and fair dealing claim is based on defendants'

2    conduct related to the origination of plaintiff's underlying loan, as well as certain disclosures and

3    terms of credit related thereto, it is preempted by 12 C.F.R. § 560.2(b)(4), (b)(9), and (b)(10).

4    *See Jones-Boyle v. Wash. Mutual Bank*, FA, No. CV 08–02142, 2010 WL 2724287, at *6-7

5    (N.D. Cal. July 8, 2010) (holding that breach of contract and implied covenant of good faith and

6    fair dealing claims preempted by HOLA); *Lopez v. Wachovia Mortgage*, 2009 WL 4505919, at

7    *4 (E.D. Cal. Nov. 20, 2009) (dismissing with prejudice breach of contract and implied covenant

8    of good faith and fair dealing claims because they are preempted by HOLA).  Therefore,

9    plaintiff's claim for breach of the covenant of good faith and fair dealing should be dismissed

10   without leave to amend.

11                    8.  Eighth Claim: Declaratory Relief

12   Plaintiff contends that the subject loan documents are void *ab initio* because of

13   defendants' conduct and that it is therefore improper for defendants to enforce those documents

14   through foreclosure.  Compl. ¶¶ 62, 63.  Therefore, plaintiff seeks an order defining and

15   determining the rights, obligations, duties, and responsibilities of plaintiff and defendants with

16   regard to the subject property.  *Id.*  ¶ 65.  Wells Fargo moves to dismiss plaintiff's declaratory

17   relief claim, arguing that the cause of action is time-barred because it is dependent upon claims

18   that are time-barred and the claim is premised on claims preempted by HOLA.  Mot. at 4, 28.

19   In seeking declaratory relief, a plaintiff must satisfy a two part test under the Declaratory

20   Judgment Act, 28 U.S.C. § 2201, demonstrating that a declaratory judgment is appropriate.  *See*

21   *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).  The court must first

22   determine if an actual case or controversy exists; then, the court must decide whether to exercise

23   its jurisdiction to grant the relief requested.  *Id*.

24   For declaratory relief, there must be a substantial controversy, between parties having

25   adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory

26   judgment.  *Maryland Cas. Co. v. Pac. Coal & Oil Co*., 312 U.S. 270, 273 (1941).  Unless an

                                          26

1  actual controversy exists, the district court is without power to grant declaratory relief.  *Garcia v.*

2  *Brownell*, 236 F.2d 356, 357-58 (9th Cir. 1956).  The mere possibility, even probability, that a

3  person may in the future be adversely affected by official acts not yet threatened does not create

4  an "actual controversy."  *Id*.  Further, declaratory relief should be denied if it will "neither serve

5  a useful purpose in clarifying and settling the legal relations in issue nor terminate the

6  proceedings and afford relief from the uncertainty and controversy faced by the parties."  *United*

7  *States v. Washington*, 759 F.2d 1353, 1356-57 (9th Cir. 1985).

8      Here, the declaratory relief plaintiff seeks is commensurate with the relief sought through

9  his other causes of action.  Thus, plaintiff's declaratory relief claim is duplicative and

10  unnecessary.  *See Permpoon v. Wells Fargo Bank Nat. Ass'n*, 2009 WL 3214321, at *5 (S.D. Cal.

11  Sep. 29, 2009).  Accordingly, plaintiff's request for declaratory relief should be dismissed

12  without leave to amend.

13          9.  Ninth Claim: Quiet Title

14      Plaintiff alleges that he is the legal owner of the subject property and therefore seeks to

15  quiet title against the claims of defendants, who hold themselves out as the equitable owners of

16  the subject property.  Compl. ¶¶ 67-68.  Wells Fargo moves to dismiss plaintiff's quiet title

17  claim, arguing that plaintiff does not allege a full tender of the indebtedness to support a claim to

18  set aside a foreclosure sale.  Mot. at 4, 29.

19      To establish a claim for quiet title, plaintiff must file a verified complaint that alleges: (a)

20  a description of the property; (b) plaintiff's title as to which a determination is sought; (c) the

21  adverse claims to the title; (d) the date as to which the determination is sought; and (e) a prayer

22  for the determination of title.  Cal. Civ. Proc. Code § 761.020.  Additionally, plaintiff must allege

23  that he has tendered his indebtedness.  *See Kelley v. Mortg. Elec. Registration*, 642 F. Supp.2d

24  1048, 1057 (N.D. Cal. 2009) ("Plaintiffs have not alleged . . . that they have satisfied their

25  obligation under the Deed of Trust.  As such, they have not stated a claim to quiet title."); *see*

26  *also Distor v. U.S. Bank, NA*, 2009 WL 3429700, at *6 (N.D. Cal. Oct. 22, 2009) ("plaintiff has

27

no basis to quiet title without first discharging her debt, and . . . she has not alleged that she has done so and is therefore the rightful owner of the property").  Here, plaintiff fails to allege tender or the ability to offer tender.  Therefore, plaintiff's quiet title claim is insufficient to withstand a motion to dismiss under *Twombly*, 550 U.S. at 555, and should be dismissed with leave to amend.

### 10.  Tenth Claim: Injunctive Relief

Finally, plaintiff's tenth claim for relief seeks an injunction prohibiting defendants from taking any further actions that interfere with plaintiff's use and enjoyment of the subject property.  Compl. ¶ 73.  Wells Fargo moves to dismiss plaintiff's injunctive relief claim, arguing that injunctive relief is a remedy not a claim for relief, and that the claim is moot because it seeks to enjoin a trustee's sale that has already taken place.  Mot. at 4, 29.

Injunctive relief "is a remedy and not, in itself, a claim, and a claim must exist before injunctive relief may be granted."  *Loder v. World Savings Bank, N.A.*, 2011 WL 1884733, at *8 (N.D. Cal. May 18 2011) (citing *Shell Oil Co. v. Richter*, 52 Cal. App. 2d 164, 168)).  Therefore, plaintiff's tenth claim for injunctive relief should be dismissed without leave to amend.

### III.  Motion to Strike

Defendants move to strike all references in plaintiff's complaint to his request for punitive and/or exemplary damages; for damages under California Business and Professions Code section 17200; for rescission of certain loan documents; and for injunctive relief.  Dckt. No. 8 at 5.

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter."  A matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by* 510 U.S. 517 (1994). A matter is impertinent if it consists of statements that do not pertain to and are not necessary to the issues in question.  *Id*.  Redundant matter is defined as allegations that "constitute a needless

repetition of other averments or are foreign to the issue." *Thornton v. Solutionone Cleaning Concepts, Inc*., 2007 WL 210586 (E.D. Cal. Jan. 26, 2007) (citing *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005)).  Finally, a matter is scandalous if it improperly casts a derogatory light on a party or other person.  *Skadegaard v. Farrell,* 578 F. Supp. 1209, 1221 (D.N.J. 1984); *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 665 (7th Cir. 1992).  As with motions to dismiss for failure to state a claim, when ruling upon a motion to strike, the court must view the pleading under attack in the light more favorable to the pleader.  *Lazar v. Trans Union LLC,* 195 F.R.D. 665, 669 (C.D. Cal. 2000); *Multimedia Patent Trust v. Microsoft Corp*., 525 F. Supp.2d 1200, 1207 (S.D. Cal. 2007).

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties.  *See* 5A C. Wright & A. Miller, *Federal Practice and Procedure*: Civil 2d 1380; *see also Hanna v. Lane*, 610 F. Supp. 32, 34 (N.D. Ill. 1985).  However, granting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues.  *Fantasy*, 984 F.2d at 1527-28.

If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits.  *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010); *see also* 5A Wright & Miller, *supra*, at 1380.  *Whittlestone* emphasized the distinction between Rule 12(f) and Rule 12(b)(6) and held that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law.  *Id*. at 976.  "Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading . . . we would be creating redundancies within the Federal Rules of Civil Procedure."  *Id.*; *see also Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) ("Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of

all or a part of a complaint.").

Here, defendants seek to use Rule 12(f) to obtain a ruling that plaintiff is not entitled to certain damages/remedies as a matter of law, a ruling that is properly sought under either Rule 12(b) or Rule 56. Moreover, trial courts are not permitted to determine disputed and substantial factual or legal issues in deciding a motion to strike. *Id.* The court's inquiry is limited to whether the statement constitutes either an insufficient defense, or redundant, immaterial, impertinent, or scandalous matter under Rule 12(f), and Wells Fargo has not shown that the requested damages/remedies have "no possible bearing on the subject matter of the litigation." *LeDuc*, 814 F. Supp. at 830. Accordingly, the motion to strike is "really an attempt to have certain portions of [plaintiff's] complaint dismissed . . . . " *Whittlestone*, 618 F.3d at 974. Therefore, the motion to strike is denied without prejudice. Going forward, Wells Fargo may have valid arguments regarding the availability of certain damages, especially given that this order recommends dismissal of several claims with prejudice. However, Wells Fargo will have the opportunity to properly move to dismiss those damages claims if they remain in the amended pleading plaintiff files in accordance with this order.

IV.     Conclusion

Accordingly, it is hereby ORDERED that the status (pretrial scheduling) conference currently set for hearing on December 21, 2011, is vacated.[7]

It is further RECOMMENDED that:

1. Wells Fargo's motion to dismiss, Dckt. No. 7, be granted.

2. Wells Fargo's motion to strike, Dckt. No. 8, be denied.

3. Plaintiff's complaint be dismissed in its entirety.

////

---

[7] As a result, the parties are not required to submit status reports as provided in the August 24, 2010 order. *See* Dckt. No. 4. However, if the recommendation of dismissal herein is not adopted by the district judge, the undersigned will reschedule the status conference and require the parties to submit status reports.

4.  Plaintiff be granted thirty days from the date of service of any order adopting these findings and recommendations to file an amended complaint, so long as he can cure the abovementioned defects by truthfully alleging facts that are not inconsistent with those contained in his current complaint.

5.  Plaintiff be admonished that, in any amended complaint, plaintiff must plead against which defendants he brings each cause of action and what each defendant did to support relief under each respective cause of action and that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint."

6.  Plaintiff be warned that failure to timely file an amended complaint in accordance with any order adopting these recommendations will result in a recommendation this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 1, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE